**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Daniel M. Gantt (DG 5758)
Thorsten Schmidt (TS 0016)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

Attorneys for Plaintiff
SANDATA TECHNOLOGIES, INC.

SANDATA TECHNOLOGIES, INC.,

Plaintiff,

v.

INFOCROSSING, INC.,

Defendant.

Civil Action No. 05-CV-9546 (LMM)(THK)

(ECF CASE)

**SANDATA'S OPPOSITION TO**
**INFOCROSSING'S MOTION FOR SEPARATE TRIALS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(b)**

Dated: January 25, 2008

Daniel M. Gantt (DG 5758)
Thorsten Schmidt (TS 0016)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

Attorneys for Plaintiff
SANDATA TECHNOLOGIES, INC.

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Infocrossing Has Failed To Meet Its Burden Of Proving That Any Issue In This Case Should Be Tried Separately .......... 3

1. Infocrossing Has Failed To Establish Why Either (1) The Infringement Of The '183 Patent Or (2) The Infringement Of The '893 and '912 Patents Collectively Should Be Tried Separately .......... 4

2. Infocrossing Has Failed To Show That Damages Should Be Tried Separately From The Rest Of The Case .......... 6

3. Infocrossing Has Failed To Establish Why Willful Infringement Should Be Tried Separately .......... 9

B. Separating This Case Into Four Separate Trials Would Contravene The Interests Of Justice And Compromise Judicial Economy .......... 11

1. Separate Trials Are Not Warranted In This Simple, Straightforward Patent Case .......... 11

2. Separate Trials Would Require The Repeated Presentation Of The Same Witnesses And Duplicative Evidence .......... 12

3. Separate Trials Would Greatly Prejudice Sandata .......... 13

III. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## CASES

**Page**

*Aldous* v. *Honda Motor Co., Ltd.*,
No. 94-CV-1090, 1996 U.S. Dist. LEXIS 7855 (N.D.N.Y. May 30, 1996) ........ 11

*Boston Scientific Corp.* v. *Johnson & Johnson,*
No. C 02-00790, 2006 U.S. Dist. LEXIS 89841
(N.D. Cal. Nov. 29, 1990) ........ 7, 11-12

*Bristol-Myers Squibb Co.* v. *Rhone-Poulenc Rorer, Inc.*,
95 Civ. 8833, 2000 U.S. Dist. LEXIS 10064 (S.D.N.Y. July 19, 2000) ........ 9

*Carson* v. *City of Syracuse*,
No. 92-CV-777, 1993 U.S. Dist. LEXIS 9508 (N.D.N.Y. July 7, 1993) ........ 3

*Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*,
02 Civ. 2748, 2007 U.S. Dist. LEXIS 71072
(E.D.N.Y. Sept. 25, 2007) ........ 2-3, 5, 10

*Cornell Research Found., Inc.* v. *Hewlett-Packard Co.*,
Civ. Action No. 5:01-CV-1974, 2006 U.S. Dist. LEXIS 97053
(N.D.N.Y. Aug. 15, 2006) ........ 3, 11

*Fuji Mach. Mfg. Co., Ltd.* v. *Hover-Davis, Inc.*,
982 F. Supp. 923 (W.D.N.Y. 1997) ........ 3, 5-6, 9, 11

*Gaus* v. *Conair Corp.*,
94 Civ. 5693, 2000 U.S. Dist. LEXIS 12918 (S.D.N.Y. Sept. 7, 2000) ........ 3-4, 9

*Georgia-Pacific Corp.* v. *United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ........ 8

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ........ 8

*Hanlin Group, Inc.* v. *Village of Solvay, N.Y.*,
No. 88-CV-773, 1990 U.S. Dist. LEXIS 14310 (N.D.N.Y. Oct. 15, 1990) ........ 11

*HCC, Inc. v. R H & M Mach. Co.*,
96 Civ 4920, 1998 U.S. Dist. LEXIS 18968 (S.D.N.Y. Dec. 4, 1998) ........ 7-8, 11

*Hilleby* v. *FMC Corp.*,
No. C-91-0568, 1992 U.S. Dist. LEXIS 20835 (N.D. Cal. May 27, 1992) ........ 12-13

# TABLE OF AUTHORITIES

## CASES

**Page**

*Innovative Office Prods., Inc.* v. *SpaceCo, Inc.*,
Civil Acton No. 05-04037, 2006 U.S. Dist. LEXIS 29439
(E.D. Pa. May 15, 2006) ........ 7

*KSR Int'l Co. v. Teleflex Inc.*,
127 S. Ct. 1727 (2007) ........ 8

*Laitrim Corp.* v. *Hewlett-Packard Co.*,
791 F. Supp. 113 (E.D. La. 1992) ........ 11

*Lennon* v. *Seaman*,
99 Civ. 2664, 2002 U.S. Dist. LEXIS 1237 (S.D.N.Y. Jan. 28, 2002) ........ 13

*Monaghan v. SZS 33 Assocs., L.P.*,
827 F. Supp. 233 (S.D.N.Y. 1993) ........ 2-3

*Novartis Pharms. Corp.* v. *Apotex Corp.*,
02 Civ. 8917, 2004 U.S. Dist. LEXIS 11382 (S.D.N.Y. June 22, 2004) ........ 10

*Real* v. *Bunn-O-Matic Corp.*,
195 F.R.D. 618 (N.D. Ill. 2000) ........ 3, 4, 8-9

*Schneider (USA), Inc.* v. *Cordis Corp.*,
Case No. Civ. 4-92-1143, 1993 U.S. Dist. LEXIS 15213
(D. Minn. May 10, 1993) ........ 5, 7, 8

*SmithKline Diagnostics, Inc* v. *Helena Labs. Corp.*,
926 F.2d 1161 (Fed. Cir. 1991) ........ 8

*THK Am. Inc. v. NSK Co. Ltd.*,
151 F.R.D. 625 (N.D. Ill. 1993) ........ 9

*Trading Techs. Int'l, Inc.* v. *eSpeed, Inc.*,
431 F. Supp. 2d 834 (N.D. Ill. 2006) ........ 5n, 10

*WeddingChannel.Com, Inc. v. The Knot, Inc.*,
03 Civ. 7369, 2004 U.S. Dist. LEXIS 25749 (S.D.N.Y. Dec. 29, 2004) ........ 3-4, 9

# TABLE OF AUTHORITIES

## CASES

**Page**

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429 (D. Del. 1989)....11, 13

## RULES

Federal Rule of Civil Procedure 42(b)....2, 6, 9, 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Daniel M. Gantt (DG 5758)
Thorsten Schmidt (TS 0016)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

Attorneys for Plaintiff
SANDATA TECHNOLOGIES, INC.

| | |
|---|---|
| SANDATA TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INFOCROSSING, INC.,<br><br>Defendant. | Civil Action No. 05-CV-9546 (LMM)(THK)<br><br>(ECF CASE) |

**SANDATA'S OPPOSITION TO**
**INFOCROSSING'S MOTION FOR SEPARATE TRIALS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(b)**

## I. INTRODUCTION

This case involves infringement by only one defendant, Infocrossing, Inc. ("Infocrossing") of three closely related patents that are all directed to the same, simple technology: a telephony-based time and attendance system for tracking outside employees. Of the numerous claims in each of these patents, only five representative claims are going to be tried by plaintiff Sandata Technologies, Inc. ("Sandata"). Moreover, Sandata is alleging that each of these claims is infringed by only two nearly identical Infocrossing Home Care systems. As such, the evidence to prove liability (*i.e.*, infringement, validity and enforceability), damages and

willful infringement of the claims in this case necessarily will include testimony from many of the same witnesses and will essentially involve the same documents and data. Far from being complex, this case may well be one of the simplest utility patent cases that has come before this tribunal.

In yet another attempt to delay adjudication of the merits of this case and to make the resolution of this case even more wasteful of the time and resources of both this Court and Sandata, Infocrossing now asks this Court to divide this simple, straightforward patent case into four separate trials: (1) trying first infringement of U.S. Patent No. 5,255,183 ("the '183 patent"); (2) then infringement of both U.S. Patent Nos. 5,646,839 ("the '839 patent") and 5,963,912 ("the '912 patent"); (3) then damages; and (4) finally willful infringement. This burdensome request will necessarily result in this Court (and, potentially, separate juries) trying issues relating to a single subject matter multiple times.

As is explained in detail below, Infocrossing has not established and cannot establish the proper grounds for this request, which flies in the face of basic principles of judicial efficiency and economy. As such, Sandata respectfully submits that this Court should reject this wholly inefficient construct and deny Infocrossing's Motion For Separate Trials Pursuant To Federal Rule of Civil Procedure 42(b).

## II. ARGUMENT

Separate trials, pursuant to Federal Rule of Civil Procedure 42(b), are only appropriate in furtherance of "convenience, to avoid prejudice, or to expedite and economize." "In all cases, including patent cases, bifurcation [in this case quadrifurcation][1] is the exception, not the rule." *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 02 Civ. 2748, 2007 U.S. Dist. LEXIS 71072,

[1] Whereas the typical movant in a patent case seeks only separate trials for liability and damages, Infocrossing here seeks four separate trials -- including two separate liability trials.

at *8 (E.D.N.Y. Sept. 25, 2007); *see also Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) (applying "the fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation, even in personal injury actions, is reserved for truly extraordinary situations of *undue* prejudice") (emphasis in original).

Accordingly, "[b]ifurcation of trials, even in patent cases, should be the exception, not the rule." *Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc.*, 982 F. Supp. 923, 924 (W.D.N.Y. 1997); *see also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) ("The piecemeal trial of separate issues in a single lawsuit is not to be the usual course. . . . Bifurcation in patent cases, as in others, is the exception, not the rule. . . . 'Courts should not order separate trials unless such a disposition is clearly necessary.'") (authorities omitted). The moving party bears the burden of establishing that separate trials are warranted. *See Computer Assocs.*, 2007 U.S. Dist. LEXIS 71072, at *7.

### A. Infocrossing Has Failed To Meet Its Burden Of Proving That Any Issue In This Case Should Be Tried Separately

In determining whether to divide a case into separate trials, this Court must consider whether separate trials "'would (1) avoid unfair prejudice to a party, (2) provide for convenience, and (3) expedite the proceedings and be more economical.'" *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-CV-1974, 2006 U.S. Dist. LEXIS 97053, at *12 (N.D.N.Y. Aug. 15, 2006) (quoting *Carson v. City of Syracuse,* No. 92-CV-777, 1993 U.S. Dist. LEXIS 9508, at *2 (N.D.N.Y. July 7, 1993)). Courts have also considered "'1) whether significant resources would be saved by bifurcation, 2) whether bifurcation [would] increase juror comprehension, and 3) whether bifurcation [would] lead to repeat presentations of the same evidence and witnesses.'" *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 03 Civ. 7369,

2004 U.S. Dist. LEXIS 25749, at *3 (S.D.N.Y. Dec. 29, 2004) (quoting *Gaus v. Conair Corp.*, 94 Civ. 5693, 2000 U.S. Dist. LEXIS 12918, at *3 (S.D.N.Y. Sept. 7, 2000)) (denying motion to bifurcate).

Infocrossing, however, has failed to show how separating any of the issues in this case would achieve anything other than delay of the trial and undue complication of the litigation at the expense of Sandata and this Court. In fact, Infocrossing has cited no case -- and plaintiff has been unable to locate any such case -- in which a Court has agreed to divide a patent case into four separate trials as proposed by Infocrossing, namely: (1) infringement of one patent; (2) infringement of additional, closely related patents arising from the same application as the first patent; (3) damages; and (4) willful infringement.[2]

### 1. Infocrossing Has Failed To Establish Why Either (1) The Infringement Of The '183 Patent Or (2) The Infringement Of The '893 and '912 Patents Collectively Should Be Tried Separately

Infocrossing's demand that infringement of the '183 patent be tried separately from trial of infringement of the '893 and '912 patents rests upon an unsupportable and speculative conclusion that the jury in this case will be confused by general patent law and facts that are hardly unique to this patent case. Addressing very similar circumstances, one Court explained that "when lawyers put their minds to it, they can complicate anything, but that is not the test." *Real*, 195 F.R.D. at 622. Plainly, complication is Infocrossing's goal. Indeed, Infocrossing's brief tries to make this case seem impossible for any jury to understand, iterating a jumbled list of patent terms, claims, defenses and general patent jargon that may or may not have anything to do with this trial. (*See* Mem. at 4-5).

2 The total lack of cases that divide a patent proceeding into four separate trials in the manner proposed by Infocrossing is revealing of Infocrossing's purposeful intention to assert, and complete reckless disregard for the law in asserting, any and all possible arguments against Sandata in this case, regardless of merit.

To the degree that its brief is decipherable, Infocrossing makes no distinction between questions of law and equity, such as claim construction and inequitable conduct, which are for the Court to decide, and questions of fact for the jury, such as literal infringement and infringement under the doctrine of equivalents. (*See Id.*). Nor does Infocrossing make any effort to explain why these issues, which are present in virtually every patent trial, are unusually difficult in this case. *See, e.g., Schneider (USA), Inc. v. Cordis Corp.*, Case No. Civ. 4-92-1143, 1993 U.S. Dist. LEXIS 15213, at *7-8 (D. Minn. May 10, 1993) (Similar issues "are present in almost every patent infringement action. The complexity of patent cases notwithstanding, as in other cases, separate trials should be the exception, not the rule.").

Furthermore, Infocrossing's assertion that a ruling in its favor with respect to the '183 patent would obviate the rest of the trial is simply wishful thinking. There is no reason why a jury could not then find, at least, the '912 patent infringed because its claims require fewer elements. Even if true, however, this assertion by Infocrossing could be made in virtually every case. Thus, such an argument hardly supports Infocrossing's demand to separate the '183 infringement trial from the remaining issues and to try the '183 infringement case first.[3] *See, e.g. Computer Assocs.*, 2007 U.S. Dist. LEXIS 71072, at *9-10 (denying a motion to bifurcate: "CA argues that judicial resources would be preserved by bifurcation because a finding of no liability would obviate entirely the need for a second trial. However, the same could be said of every case."); *Fuji Mach.,* 982 F. Supp. at 924 (The alleged infringer "simply offers the traditional argument that bifurcation will promote judicial economy because a verdict

[3] Infocrossing boldly asserts that it has a reasonable likelihood of success on the merits with respect to the non-infringement and unenforceability of the '183 patent, but provides no basis whatsoever for its naked, speculative and wishful assertion. Such empty allegations are clearly insufficient to warrant the separation of trial. *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 840 (N.D. Ill. 2006) ("Although defendants' argument that separate trials would promote judicial economy if defendants prevail, is true, *they have not demonstrated that such success is likely.*") (emphasis added).

in its favor on the issue of liability would obviate the need for a trial on damages. While this assertion may be true, it does not, without more, satisfy [defendant's] burden to prove that bifurcation is justified.").

Accordingly, Infocrossing has failed to show that separating the issue of infringement of the '183 patent and trying it first (of the four trials that Infocrossing has requested) or that also separating trial of infringement of the closely related '839 and '912 patents, is remotely appropriate or advantageous under Rule 42(b). As such, Infocrossing's motion should be denied.

### 2. Infocrossing Has Failed To Show That Damages Should Be Tried Separately From The Rest Of The Case

Infocrossing's demand that the determination of damages be tried separately from the determinations of liability and willfulness is apparently grounded on a vague, unsupported allegation that liability, willfulness and damages issues are "obviously complex," in part because three patents are at issue. (*See* Mem. at 6). Infocrossing neglects to explain that all three of the patents arose from the same patent application and that, therefore, they necessarily are directed to the same general subject matter, share nearly identical written descriptions and all incorporate the original file history that led to the '183 patent (which is also the most pertinent, in terms of its consideration of prior art) as part of their own prosecution history. Moreover, contrary to Infocrossing's unsupported mischaracterization of the complexity of the technology, all three patents are directed to the same, simple subject matter:[4] a telephony-based time and attendance system for tracking outside employees. Indeed, Sandata is planning to try in this proceeding only five representative claims against the two nearly identical Infocrossing Home Care systems.

---

4 In fact, the United States Patent and Trademark Office ("USPTO") required that the inventor file a terminal disclaimer to limit the term of the '839 and '912 patents not to extend beyond the term of the parent '183 patent, precisely because the USPTO believed that the later claims were "identical" to the '183 patent claims "save for minor differences in wording." The USPTO also found that the term "calling number identification data" in the '839 patent claims "is the same as the ANI data recited in the '183 patent." (*See* Exhibit 1, attached hereto, which is an excerpt from an Office Action during prosecution of the '839 patent claims).

Numerous cases have refused to separate damages and liability when faced with many more patents (not even necessarily from the same family), multiple accused products and systems, and many more claims than those to be tried in this case -- and particularly so when the patents are directed to the same subject matter. *See, e.g., Innovative Office Prods., Inc. v. SpaceCo, Inc.*, Civil Acton No. 05-04037, 2006 U.S. Dist. LEXIS 29439, at *7 (E.D. Pa. May 15, 2006) (refusing to separate damages phase of trial where six patents were at issue that were all directed to similar subject matter); *Boston Scientific Corp. v. Johnson & Johnson*, No. C 02-00790, 2006 U.S. Dist. LEXIS 89841, at *12 (N.D. Cal. Nov. 29, 2006) (refusing to bifurcate liability of a first set of four patents from liability of a second set of two patents when "[a]ll of the patents involve the same basic goal"); *Schneider*, 1993 U.S. Dist. LEXIS, at *6 (refusing to bifurcate liability and damages where two patents were directed to similar technology).

Infocrossing's assertion that liability and damages are "distinct" issues warranting bifurcation because liability involves "infringement" and damages involves analysis of "financial and sales data" is simplistic, at best. (*See* Mem. at 8). As one Court put it, "[i]f defendant's argument was accepted and this court bifurcated this trial because the jury must consider various factors in calculating damages, every patent case would be bifurcated because the damages issues that arise in this case arise in almost every patent case." *Schneider*, 1993 U.S. Dist. LEXIS 15213, at *11; *see also HCC, Inc. v. R H & M Mach. Co.*, 96 Civ 4920, 1998 U.S. Dist. LEXIS 18968, at *3-4 (S.D.N.Y. Dec. 4, 1998) (denying motion to bifurcate issues of liability and damages: "The jury must be presumed to be capable of discerning the difference between the issues, and it will be aided in this respect by guidance from the Court. . . . Should a concrete

instance of confusion arise, the Court may take remedial action, including issuing curative instructions.").

Moreover, and contrary to Infocrossing's assertion, the issues relating to liability and damages do here clearly overlap. "It is well established that in determining a damage amount based upon lost profits and reasonable royalty rate calculations, the jury must consider a variety of factors." *Schneider*, 1993 U.S. Dist LEXIS 15213, at *11. For instance, in determining a reasonable royalty, the jury generally considers twelve factors, including royalties received for the patents in suit, the commercial relationship between the patent owner and the infringer, profitability of the patented product or system and the advantages of the patented product or system over that which had been available before. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). With respect to lost profits, the jury generally considers at least four elements, including the demand for the patented product and the patent owner's manufacturing and marketing capability to exploit the demand for the patented product. *See SmithKline Diagnostics, Inc v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991). Many of these damages issues overlap clearly with those to be considered regarding obviousness of the claims, such as "'commercial success, long felt but unresolved needs, failure of others, etc.'" *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1734 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

The possibility of separate juries to determine liability, damages and then willfulness is altogether impractical, and having a single jury for four separate trials would be completely inefficient and virtually guarantee confusion. It would, indeed, be a difficult task for a jury to award damages fairly in this case if it did not have a full understanding of the patents and the scope and nature of Infocrossing's infringement:

> "'The damages trial cannot be conducted in an evidentiary vacuum. A jury will have to be familiar with the patents at issue, the products, and the . . . industry itself. Therefore, much of the evidence that can be expected to be introduced in a trial on damages will be duplicative of the evidence that can be expected to be presented in a trial on liability. If the case were bifurcated [in this case, split into four pieces], it would be necessary to revisit the testimony and demonstrative evidence that previously had been used to explain to the liability jury, to wit: what [the infringing products] are, how they operate, how they are made, used and sold, and other basic information. It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times.'"

*Real*, 195 F.R.D. at 624 (quoting *THK Am. Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625, 630 (N.D. Ill. 1993)); *accord, WeddingChannel.Com,* 2004 U.S. Dist. LEXIS, at *10 (denying motion to bifurcate liability and damages in patent case); *Gaus*, 2000 U.S. Dist. LEXIS, at *8-9 (denying motion to bifurcate liability and damages in patent case); *Fuji Mach.*, 982 F. Supp. at 925 (denying motion to bifurcate liability and damages); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 95 Civ. 8833, 2000 U.S. Dist. LEXIS 10064, at *15 n.3 (S.D.N.Y. July 19, 2000) (denying motion to bifurcate the trial of liability and damages: "This case is already too long and contentious to be inflicted on more than one jury or to be extended to allow for bifurcation.").

Accordingly, Infocrossing has failed to show that this case is at all different from the usual patent case so as to warrant a separate trial on the issue of damages, pursuant to Rule 42(b). As such, Infocrossing's motion should be denied.

### 3. Infocrossing Has Failed To Establish Why Willful Infringement Should Be Tried Separately

Infocrossing offers absolutely no support for its allegation that the determination of willfulness should be tried separately from either liability or damages. Instead, Infocrossing blithely concludes that "willful infringement should logically be reserved for adjudication after

liability." (Mem. at 9). This purely conclusory statement is hardly enough to support separating willfulness for trial.

*Computer Assocs.*, 2007 U.S. Dist. LEXIS 71072, at *9, the very case cited by Infocrossing as setting forth the current standard for determining willfulness, is much more informative than Infocrossing on the issue of whether to separate the willfulness determination. The passage cited by Infocrossing explains that willfulness is determined by the record with respect to liability: "Although the [willfulness] standard has changed, the interdependence of willfulness and infringement has not[,] given that the 'objectively defined risk' [taken by the infringer] *is 'determined by the record developed in the infringement proceeding.*'" *Id.* (emphasis added). Infocrossing, however, then omitted the Court's most instructive conclusion: "Accordingly, '[*a*] *willfulness determination . . . is a finding of fact inextricably bound to the facts underlying the alleged infringement.*'" *Id.* (emphasis added). The Court in the *Computer Assocs.* case therefore refused to bifurcate the willfulness determination. *Id.* at *9-12; *accord, Novartis Pharms. Corp. v. Apotex Corp.*, 02 Civ. 8917, 2004 U.S. Dist. LEXIS 11382 (S.D.N.Y. June 22, 2004) (denying motion for a separate trial on the issue of willfulness); *Trading Techs.*, 431 F. Supp. 2d at 841 ("[E]vidence of liability and willfulness will likely overlap. . . . Therefore, like the other courts in this district, we find bifurcation would result in prejudice to plaintiff, who, along with facing a substantial delay in final determination of the action, would be forced to present the same evidence in two separate trials.").

Accordingly, Infocrossing has failed to show that a separate trial on the issue of willful infringement is remotely appropriate under Rule 42(b). As such, Infocrossing's motion should be denied.

**B. Separating This Case Into Four Separate Trials Would Contravene The Interests Of Justice And Compromise Judicial Economy**

Courts have cautioned that "'even if bifurcation might somehow promote judicial economy, courts should not order separate trials when "bifurcation [quadrifurcation in this case] would result in unnecessary delay, additional expense, or some other form of prejudice."'" *Fuji Mach.*, 982 F. Supp. at 924 (quoting *Laitrim Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992), which quoted *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989). "[B]ifurcation is not suitable where the same witnesses may be required to testify at both stages, and where the evidence pertaining to the issues to be separately tried can reasonably be expected to overlap." *Cornell Research,* 2006 U.S. Dist. LEXIS 97053, at *13 (citing *Aldous v. Honda Motor Co., Ltd.*, No. 94-CV-1090, 1996 U.S. Dist. LEXIS 7855, at *1 (N.D.N.Y. May 30, 1996)); *see also Hanlin Group, Inc. v. Village of Solvay, N.Y.*, No. 88-CV-773, 1990 U.S. Dist. LEXIS 14310 (N.D.N.Y. Oct. 15, 1990) (denying bifurcation in order to promote efficiency in light of evidentiary overlap).

**1. Separate Trials Are Not Warranted In This Simple, Straightforward Patent Case**

The separation of any of the issues urged by Infocrossing is simply not necessary to prevent juror confusion in an infringement action that involves three nearly identical patents from the same patent family (from which only five representative claims are to be tried), involving only one defendant and two nearly identical Infocrossing Home Care systems. As explained above, Infocrossing has made no showing as to how any of the evidence in this case is so complex as to lead to juror confusion. Moreover, in a patent case, just like any other case, "[t]he jury must be presumed to be capable of discerning the difference between the issues." *HCC, Inc.*, 1998 U.S. Dist. LEXIS 18968, at *4. One Court has expressly rejected blanket

assertions of juror confusion. "[T]he Court does not necessarily agree that facts involved in one comprehensive trial 'simply will be too much for some members of the jury to follow.' . . . Jurors are asked to hear complicated cases every day, and with the help of competent attorneys, do a fine job understanding the issues and facts. Judicial economy therefore far outweighs any juror confusion which might result from holding one trial on all of the patents." *Boston Scientific*, 2006 U.S. Dist. LEXIS 89841, at *12.

### 2. Separate Trials Would Require The Repeated Presentation Of The Same Witnesses And Duplicative Evidence

The evidence at trial with respect to liability regarding all of the related patents, damages and willfulness will substantially overlap. Such duplicative evidence will include testimony on the design, development, manufacturing and operation of the Infocrossing system, as well as any evidence regarding marketing and sales of the Infocrossing system, and any evidence of copying and commercial success. Similar information regarding product design, manufacturing capability, marketing, sales and commercial success of the competing Sandata system will need to be elicited. Infocrossing's suggestion that this Court should hold multiple separate trials and that, potentially, separate juries should evaluate this overlapping technical and financial evidence merely because "the presentation of detailed technical documentation and expert analysis" (Mem. at 7) could "prove difficult for the jury to understand" (Mem. at 7), is absurd. Contrary to Infocrossing's contention, multiple trials will promote the exact opposite of judicial economy.

Moreover, the witnesses and evidence regarding these liability, willfulness and damages issues are largely identical. Under Infocrossing's four separate trial proposal, certain critical party witnesses would need to be called at least two, three and likely even four times. *See, e.g. Hilleby v. FMC Corp.*, No. C-91-0568, 1992 U.S. Dist. LEXIS 20835, at *9 (N.D. Cal. May 27, 1992) ("[J]udicial efficiency would be disserved by bifurcating [where the two claims] involve

the same parties, the same technology, the same expert witnesses, most of the same lay witnesses and most of the same issues of patent validity and infringement."); *see also Lennon v. Seaman*, 99 Civ. 2664, 2002 U.S. Dist. LEXIS 1237, at *35 (S.D.N.Y. Jan. 28, 2002) (denying motion to bifurcate despite numerous and complex issues, where issues would involve "identical testimonial and documentary evidence").

### 3. <u>Separate Trials Would Greatly Prejudice Sandata</u>

Additionally, separation of this simple, straightforward patent proceeding would greatly prejudice Sandata. Four separate trials to address interrelated aspects of a single issue would effectively and unfairly postpone Sandata's day in court. Sandata would be further prejudiced by having to relocate and recall the same witnesses to a second, third or even fourth trial. Moreover, in the time between each of these separate trials, jurors' memories would fade regarding the initial issues of liability. Disputes would inevitably arise about whether a particular interrogatory, deposition, question or document request is relevant to infringement, validity, willfulness or all of those issues. *See, e.g., Willemijn Houdstermaatschaapij*, 707 F. Supp. at 1435 ("[I]t appears inevitable that, if the motion to bifurcate were granted, . . . the liability trial would be repeatedly delayed by disputes regarding the . . . admissability [sic] of evidence."). Alternatively, the possibility that Infocrossing could repeatedly reargue the same issues to potentially separate juries would violate Sandata's opportunity for a fair trial as well.

The separation of any one of the issues proposed by Infocrossing, let alone all four, would create inordinate delay, severely inconvenience the parties and their witnesses, add exorbitant expense, produce a much more cumbersome litigation, greatly retard resolution of the

merits of the dispute and, thereby, facilitate Infocrossing's ability to continue to infringe Sandata's patents, all to the detriment and prejudice of Sandata.

## III. CONCLUSION

For all of the foregoing reasons, Sandata respectfully requests that this Court deny Infocrossing's Motion For Separate Trials Pursuant To Federal Rule of Civil Procedure 42(b).

Dated: January 25, 2008

Respectfully submitted,

By: /s/Daniel M. Gantt

Daniel M. Gantt (DG 5758)
Thorsten Schmidt (TS 0016)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

Attorneys for Plaintiff
SANDATA TECHNOLOGIES, INC.